IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | EP-16-CR-693-DB-6 |
| | § | |
| NANCY LOVE | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Nancy Love's ("Ms. Love") "Motion for Attorney's Fees and Expenses Under the Hyde Amendment" ("Motion") filed in the above-captioned case on August 12, 2019. Therein, Ms. Love requests that the Court order the United States of America ("the Government") to reimburse her for attorney's fees and other expenses incurred as a result of this prosecution. Mot. 1, ECF No. 701. On August 23, 2019, the Government filed its "Response to Defendant Love's Motion for Attorney's Fees" ("Response"). After due consideration, the Court is of the opinion that Ms. Love's Motion shall be denied.

## BACKGROUND

Ms. Love's criminal case resulted from a long-running FBI investigation into allegations that El Paso Independent School District (EPISD) administrators conspired to falsify and manipulate data that state and federal authorities used to measure whether the district was providing all students with a high-quality education. Response 1, ECF No. 703. Ms. Love was an assistant principal at Austin High School (AHS) in EPISD during the relevant period. *Id.* at 2.

The investigation resulted in a six-count indictment against eight defendants, including Ms. Love (collectively, "the Defendants"). Indictment, ECF No. 1. The investigation revealed that Ms. Love and co-Defendants/co-Administrators John Tanner ("Mr.

Tanner"), Mark Tegmeyer ("Mr. Tegmeyer"), and Diane Thomas ("Ms. Thomas") had purportedly conspired to retaliate against two AHS teachers, including Ruben Cordero ("Mr. Cordero"), who cooperated with the FBI. Resp. 2, ECF No. 703. Ms. Love, Mr. Tanner, Mr. Tegmeyer, and Ms. Thomas were all charged with conspiracy to retaliate against a witness (18 U.S.C. §§ 371 & 1513(e)) ("retaliation count"). Indictment, ECF No. 1.

During the investigation, Ms. Love was called to appear before the grand jury and allegedly lied during her testimony. Resp. Ex. 6, ECF No. 703. When she testified before the grand jury, Ms. Love falsely claimed that a student, Mr. Rodriguez, had initiated contact with her and sought her help in pressing charges against Mr. Cordero when, in actuality, she had initially contacted Mr. Rodriguez. *Id.* at Ex. 3–6. Ms. Love later admitted to EPISD Police Officer McBain ("Officer McBain") that she had been untruthful before the grand jury and asked whether her attempt to convince Mr. Rodriguez to pursue charges against Mr. Cordero could be viewed as retaliation because her true motivation for her actions was to protect her co-defendant/co-administrator, Mr. Tanner. *Id.* at Ex. 2, 6.

Ms. Love told her son, Mr. Allan, to reach out to his classmate Mr. Rodriguez to convince Mr. Rodriguez to pursue charges against Mr. Cordero. *Id.* at Ex. 6. Mr. Rodriguez also told Federal Bureau of Investigations officers ("the FBI") that Mr. Allan had reached out to him to discuss pressing charges against Mr. Cordero. *Id.* at Ex. 3–4. Mr. Rodriguez revealed that after Mr. Allan contacted him, Mr. Tegmeyer and Ms. Love encouraged him to press charges, coaching him on what to say to Officer McBain. *Id.* Mr. Rodriguez's phone records corroborated his version of these events. *Id.* Pursuant to a proffer agreement, Ms. Love also eventually admitted to the FBI that she had lied to the grand jury. *Id.* at Ex. 6. Consequently, she was eventually charged with making a false declaration before a grand jury (18 U.S.C. §

1623) ("false declaration count").  Indictment, ECF No. 1.

Trial in this matter began on June 12, 2017.  Minute Entry for Jury Trial Proceedings, ECF No. 439–48.  During the trial, the Court heard testimony from several witnesses, including independent auditors, an associate superintendent, a campus director, a principal, vice principals, attendance clerks, and students who all testified about Ms. Love's conduct.  Govt.'s Witness List, ECF No. 472.  A mistrial was declared on June 28, 2017, due to the Government's withholding of material, potentially exculpatory evidence.  Order Granting Mistrial, ECF No. 471.  After the mistrial, the Defendants moved to dismiss the indictment, arguing that a retrial should be barred by double jeopardy due to the government's misconduct.  Mem. Op. 2–3, ECF No. 578.  After a hearing on June 14, 2018, this Court dismissed the retaliation count against Ms. Love with prejudice.  *Id.* at 1, 4.  In dismissing this count, the Court found that while "there was no prosecutorial misconduct because there was no intentional withholding of discovery materials," the Government was "at the very least negligent."  *Id.* at 3–4.

This Court dismissed Ms. Love's remaining false declaration count on July 11, 2019, after the completion of a pretrial diversion agreement.  Order of Dismissal, ECF No. 697.  The pretrial diversion agreement did not require an admission of guilt, nor did it incorporate any finding of guilt.  Pretrial Diversion Agreement, ECF No. 631.  Dismissal was not entered with prejudice, Order of Dismissal, ECF No. 697, though it would be a violation of the Pretrial Diversion Contract for the government to bring charges again.  Pretrial Diversion Agreement 2, ECF No. 631.

## STANDARD

In 1997, Congress enacted the "Hyde Amendment."  Pub. L. No. 105–119, §

3

617, 111 Stat. 2440 (1997). It states:

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act, may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

*Id.*

The purpose of the Hyde Amendment is "to penalize [the] government for prosecutorial abuses and to deter such inappropriate conduct." *United States v. Schneider*, 395 F.3d 78, 86 (2d Cir. 2005). Accordingly, Congress limited the award of fees to "affirmative prosecutorial misconduct rather than simply any prosecution which failed." *United States v. Knott*, 256 F.3d 20, 29 (1st Cir. 2001); *see also United States v. Truesdale*, 211 F.3d 898, 908 (5th Cir. 2000) (citations omitted) ("A movant under the Hyde Amendment must prove more than just that the government's position was not substantially justified.").

The Hyde Amendment "was enacted by Congress . . . to allow wrongfully prosecuted criminal defendants a means to sanction the Government for prosecutorial misconduct" and allows a district court to award a prevailing party attorney's fees only where it "finds that the position of the United States was vexatious, frivolous, or in bad faith." Pub. L. No. 105–119, § 617, 111 Stat. 2440 (1997). "The criminal defendant bears the burden of proving this by a preponderance of the evidence, as well as establishing that he is otherwise qualified for the award under the law." *United States v. Adkinson*, 247 F.3d 1289, 1291 (11th

4

Cir. 2001); *see also Truesdale*, 211 F.3d at 908. A defendant seeking fees under the Hyde Amendment must also comply with the procedural requirements of the Equal Access to Justice Act (EAJA) found in 28 U.S.C. § 2142(d). *United States v. Claro*, 579 F.3d 452, 463 (5th Cir. 2009).

Courts have determined that seven elements must be met for a defendant to receive relief under the Hyde Amendment. They are: (1) the case was pending on or after the enactment of the Hyde Amendment; (2) the case was a criminal case; (3) the defendant was not represented by assigned counsel paid for by the public; (4) the defendant was the prevailing party; (5) the prosecution was vexatious, frivolous, or in bad faith; (6) the attorney's fees were reasonable; and (7) no special circumstances exist that would make an award unjust. *United States v. Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *3 (W.D. Tex. July 9, 2012) (citing *In re 1997 Grand Jury*, 215 F.3d 430, 436 n.8 (4th Cir. 2000)). These elements are separate and independent of each other, they do not need to be met in a particular order, and the failure of the defendant to satisfy any one of them is enough to deny relief. *See, e.g., United States v. Chapman*, 524 F.3d 1073, 1089–90 (9th Cir. 2008).

## ANALYSIS

The first three elements are met because Ms. Love had to hire counsel in a criminal case brought after the Hyde Amendment was enacted. Mot. 3, ECF No. 701. However, the remaining elements are contested. *See generally* Resp., ECF No. 703. The failure to meet any element is enough to justify denial of relief. *See, e.g., Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *3. This Court will only address the failure of Ms. Love to

meet the fourth and fifth elements—either of which alone could be the basis for denial.[1]

1. **Ms. Love Was Not the Prevailing Party.**

Ms. Love admits that "prevailing party" is a key, often-disputed element because it is undefined in the Hyde Amendment. Mot. 3, ECF No. 701. The Fifth Circuit in *Sims v. Apfel* concluded that a party is not a prevailing party entitled to attorney's fees if she merely obtains a favorable procedural ruling but does not obtain relief on the merits of her claim. *See* 238 F.3d 597, 601 (5th Cir. 2001). The dismissal of Ms. Love's retaliation charge was not on the merits, nor was the dismissal of her false declaration charge upon completion of pretrial diversion; thus she is not a prevailing party entitled to Hyde Amendment relief.

a. **Ms. Love Did Not Prevail on the Retaliation Charge.**

In *Sims*, the plaintiff sued under the Equal Access to Justice Act (EAJA), rather than the Hyde Amendment, but it is relevant to this case because a defendant seeking fees under the Hyde Amendment must also comply with the procedural requirements in the EAJA. *Id.*; *see also, United States v. Claro*, 579 F.3d 452, 463 (5th Cir. 2009)). This is so because:

> [a] motion under the Hyde Amendment implicates interests identical to those implicated by one under the [EAJA] . . . [and] [i]n each case, the movant is seeking an award of attorney's fees based upon a litigating strategy employed by the government that, the movant claims, conflicts with certain statutorily defined notions of fair play.

*Claro*, 579 F.3d at 456.

The Ninth Circuit applied the EAJA requirements to a Hyde Amendment claim in a similar context as this case. *Chapman*, 524 F.3d at 1089 (citing *United States v. Campbell*,

---

1. The Court notes that the Government also argues that Ms. Love has failed to state a claim under the Hyde Amendment because she did not submit the requisite detailed, itemized report to support her request. Response 5, ECF No. 703. Because the failure of either the fourth or the fifth element is enough to deny attorney's fees, the Court does not need to reach the merits of this argument. *See Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *3.

6

291 F.3d 1169, 1172 (9th Cir. 2002)). In *Chapman*, the Ninth Circuit held that defendants were not prevailing parties even though the district court dismissed the indictment against them to sanction the government for *Brady/Giglio* discovery violations. *Chapman*, 524 F.3d at 1089–90. "The court dismissed the indictment based on the government's failure to disclose documents and the prosecutor's affirmative misrepresentations to the court." *Id.* at 1089. The Ninth Circuit highlighted that the district court never suggested that this prosecutorial misconduct was relevant to the "[d]efendant's guilt or innocence . . . [because] relief was not based on the *merits*." *Id.* at 1090 (emphasis in original). While the Ninth Circuit points out that flagrant discovery violations could, in other cases, constitute a sufficient judgment on the merits (for example, because the withheld discovery is obviously exculpatory) to bestow a defendant with "prevailing party" status, these violations would need to be intentional. *Id.* at 1089 n.6.

Ms. Love cites the Seventh Circuit, which held that a defendant is a "prevailing party" when their case resolves in a material alteration of the legal relationship, such as when a dismissal precludes the prospect that a defendant might again face criminal liability for their actions. Mot. at 3–4 (citing *United States v. Terzakis*, 854 F.3d 951, 954–55 (7th Cir. 2017). In *Terzakis*, the government moved to voluntarily dismiss the indictment against Mr. Terzakis well after the statute of limitations had run. *Terzakis*, 854 F.3d at 954. The government was precluded from pursuing the charges in the future under the applicable statute of limitations but argued that Mr. Terzakis did not prevail because the dismissal was not "relevant to [his] guilt or innocence." *Id.* (quoting *Chapman*, 524 F.3d at 1089) (alteration in original) (internal quotes omitted). The Seventh Circuit disagreed and likened the outcome to a dismissal with prejudice, which satisfies the prevailing–party requirement because it "materially alters the legal

7

relationship of the parties, as it precludes the government from bringing a prosecution that it otherwise would be entitled to bring." *Id.* (quoting *Chapman*, 524 F.3d at 1089) (internal quotes omitted). The dismissal materially altered the relationship between the government and Mr. Terzakis: the government could no longer prosecute him. *Id.* at 955. Thus, the district court did not err in determining that Mr. Terzakis was the prevailing party in this case. *Id.*

Here the facts are more akin to *Chapman* and the Fifth Circuit's precedent in *Sims*, which binds this Court. Like *Chapman*, this Court's dismissal of the retaliation count against Ms. Love was based on the Government's negligence—notably less egregious and unintentional than the affirmative misconduct in *Chapman*—which was not relevant to her guilt or innocence. Mem. Op. 3–4, ECF No. 578. Therefore, she did not prevail because it was not a disposition on the merits. *See Sims*, 238 F.3d at 601; *see also, Chapman*, 524 F.3d at 1090. And unlike *Terzakis*, the Government has not moved to voluntarily dismiss the Indictment nor have they waited until after the statute of limitations ran. 854 F.3d at 954. Instead, this Court dismissed the Indictment as a sanction against the Government for its negligent discovery violations. Mem. Op. 4, ECF No. 578. Like the defendant in *Chapman*, Ms. Love did not prevail on the retaliation count.

### b. Ms. Love Did Not Prevail on the False Declaration Charge.

In *Campbell*, the Ninth Circuit specifically held that a defendant whose charges had been dismissed after successful completion of a pretrial diversion program was not a "prevailing party" under the Hyde Amendment. 291 F.3d at 1171. Relief was not on the merits of the case. *Id.*

Ms. Love admits that the dismissal of this charge after her pretrial diversion was not entered with prejudice, but she highlights that it would be a violation of the pretrial diversion

8

"contract" for the Government to reinitiate prosecution. Mot. 4, ECF No. 701. She asserts that all her charges were "finally dismissed without any finding of guilt and without any punishment." *Id.* Ms. Love "[a]ppl[ies] the totality of the circumstances and [ ] the 'common everyday meaning' of what constitutes prevailing in a case" to conclude that she has prevailed. *Id.* Finally, Ms. Love relies again on *Terzakis* to bolster this conclusion because the dismissal following pretrial diversion resulted in a material change in the legal relationship of the parties. *Id.* at 5 (citing 854 F.3d at 954–55).

This Court once more agrees with the Ninth Circuit's reasoning, this time in *Campbell*, rather than with the Seventh Circuit's in *Terzakis*. Like in *Campbell*, the dismissal of the false declaration charge after Ms. Love's completion of pretrial diversion was not a relief on the merits. The ordinary or plain meaning of "prevail" has no place in this analysis. *See, e.g., Campbell*, 291 F.3d 1169, and *Terzakis*, 854 F.3d 951. Even if it did, this Court would similarly conclude that Ms. Love is not a prevailing party on either her false declaration or retaliation claim because she had to comply with probation-like terms for six months prior to the dismissal of the charge, which was not dismissed with prejudice. Pretrial Diversion Agreement, ECF No. 631.

### 2. The Prosecution Was Not Vexatious, Frivolous, or in Bad Faith.

Even if Ms. Love were considered a prevailing party under the Hyde Amendment, another basis for denial exists: the prosecution was not vexatious, frivolous, or in bad faith. The Hyde Amendment does not define vexatious, frivolous, or bad faith; therefore, the Court must define these terms to rule on the Motion. *See* Pub.L. No. 105–119, § 617, 111 Stat. 2440 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes). When Congress does not define a term in a statute, courts must give the term its "ordinary meaning." *Taniguchi v.*

9

*Kan Pac. Saipan, Ltd.*, 132 S.Ct. 1997, 2002 (2012) (citing *Asgrow Seed Co. v. Winterboer*, 115 S.Ct. 788, 793 (1995)). Neither the Fifth Circuit nor the Supreme Court of the United States has determined the ordinary meaning of the Hyde Amendment's key terms—vexatious, frivolous, and bad faith. *Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *4. Accordingly, the Court looks to persuasive authority. *Id.*

### a. The Prosecution Was Not Vexatious.

The ordinary meaning of vexatious is "lacking justification and intended to harass" or "[w]ithout reasonable or probable cause or excuse." *Id.* (quoting *United States v. Schneider*, 395 F.3d 78, 86 n.3 (2d Cir. 2005) (quoting Webster's Third New International Dictionary 2548 (3d ed.1993); Black's Law Dictionary 1565 (6th ed.1990)) (alteration in original) (internal quotes omitted). Applying this meaning to the purpose of the Hyde Amendment, the Eighth Circuit Court of Appeals held that "if the government had sufficient evidence to have probable cause to believe that [the defendant] committed the crimes charged, the prosecution against him was not vexatious." *Id.* (quoting *United States v. Monson*, 636 F.3d 435, 439 (8th Cir. 2011) (citing *United States v. Porchay*, 533 F.3d 704, 711 (8th Cir. 2008)) (alteration in original) (internal quotes omitted); *Truesdale*, 211 F.3d at 908 (citations omitted) (holding, without defining vexatious, that a substantially justified prosecution cannot be frivolous, vexatious, or brought in bad faith).

Ms. Love first argues that the prosecution was vexatious when it indicted her for lying to the grand jury because "a witness for the Government testified that Ms. Love had admitted to the FBI that she had lied to the grand jury." Mot. 7, ECF No. 701. "However, this 'admission' was made pursuant to a written proffer agreement that provided that Ms. Love's statements would not be used against her." *Id.* The Government's witness's testimony

was allegedly in violation of that written agreement. *Id.* Thus, according to Ms. Love, the prosecution was vexatious and in bad faith because the indictment was based on evidence that the prosecutor knew was not admissible. *Id.*

However, the Court agrees with the Government that regardless of this allegedly inadmissible evidence, Officer McBain's statement, Mr. Rodriguez's statement, and Mr. Rodriguez's call records all independently support probable cause for believing that Ms. Love committed the false declaration count. *See supra* 2; *see, e.g. Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *4. Ms. Love does not argue that this prosecution was intended to harass and has not alleged any facts that would support such a contention. *See generally* Mot., ECF No. 701. Thus, the prosecution was substantially justified and, therefore, cannot be vexatious or frivolous or in bad faith. *See, e.g., Truesdale*, 211 F.3d at 908.

### b. The Prosecution Was Not Frivolous.

Frivolous means "of little weight or importance," or "having no basis in law or in fact." *Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *4, (quoting *Schneider*, 395 F.3d at 86 n.3 (quoting Webster's Third New International Dictionary 913)). In the legal context, a frivolous claim is "one for which a proponent 'can present no rational argument based upon the evidence or law in support of that claim.'" *Id.* (quoting *Schneider*, 395 F.3d at 86 n.3 (quoting Black's Law Dictionary 668)) (internal quotes omitted). Whereas vexatious suggests an intention to harass, the defendant does not need to show improper motive to establish frivolousness. *Id.* (citing *United States v. Bowman*, 380 F.3d 387, 390–91 (8th Cir. 2004) (distinguishing vexatious from frivolous based on proving a motive); *see also, United States v. Braunstein*, 281 F.3d 982, 996 (9th Cir. 2002) (holding that "the government's position was so obviously wrong as to be frivolous," even though the defendant did not suggest that anything

11

other than incompetence led to the prosecution).

Ms. Love argues that no legal or factual basis existed for the indictment because she was not charged in the overall "cheating scheme" alleged against many other defendants; rather, her charges were "only" brought as part of that larger prosecution. *See* Mot. 8, ECF No. 701. Ms. Love goes on to explain that:

> the [misrepresentation of data] charges were brought . . . under the No Child Left Behind Act, which had already been repealed at the time of the indictment. Further, in 2016, EPISD became a 'district of innovation,' . . . which allowed the district to grant credit [ ], even if they did not meet the 'arbitrary percentage' of seat time in a class.

*Id.* Finally, Ms. Love points to the Government's conduct regarding the discovery, and the suppression of exculpatory evidence that was unacceptable and clearly in bad faith. *Id.* at 9.

The Government responds first that the No Child Left Behind Act (NCLB) was not repealed at the time of the criminal actions upon which the Indictment was based. Resp. 8, ECF No. 703. More importantly, the basis for the charges were not the NCLB itself but the federal criminal statutes alleged in the Indictment. Indictment, ECF No. 1; *see also* Govt.'s Resp. to Def.'s Mot. to Dismiss Indictment, ECF No. 329; *see also* ECF No. 353 (Court's order denying the motion to dismiss the Indictment and adopting the Government's response in full). The Court agreed with the Government's argument when initially raised in its Response to Ms. Love's Motion to Dismiss the Indictment and the Court agrees with the argument now. There was a basis in law to support this prosecution.

Next, the Government highlights that the criminal actions alleged in the Indictment occurred before the "district of innovation" policy existed. Resp. 9, ECF No. 703. Moreover, the defendants' awarding of credit through sham "mini-mesters," which at times

12

consisted of one hour of tutoring for classes that students had previously failed, would surely not be justified even under the "district of innovation" model. *Id.* (citing Ex. 4, 10). Finally, unwarranted credit awards and credit recovery were not the only criminal actions the Government alleged in the Indictment or presented evidence of during trial. *Id.* The conspiracy encompassed numerous other criminal actions. *Id.* Witnesses also testified about the defendants' manipulation of attendance records, failure to enroll certain students, and unjustifiably holding some students back in the Ninth Grade. *Id.* (citing ECF Nos. 509–17). Thus, there was a basis in fact to support this prosecution. In sum, Ms. Love's claim that the prosecution is frivolous is without merit.

### c. The Prosecution Was Not in Bad Faith.

Finally, bad faith means "'not simply bad judgment or negligence, but rather [implying] the conscious doing of a wrong because of dishonest purpose or moral obliquity.'" *Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *5 (quoting *Schneider*, 395 F.3d at 86 n.3 (quoting Black's Law Dictionary 139)). Bad faith "contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Id.* (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quoting Black's Law Dictionary 139 and citing *Franks v. Delaware*, 98 S.Ct. 2674, 2684 (1978)). *Chapman* clarifies that "although [ ] discovery violations were conducted with bad faith, the entire case was not 'vexatious, frivolous, or in bad faith.'" 524 F.3d at 1088–89.

Like in *Gomez*, Ms. Love has not presented any evidence to sustain a finding that the Government operated in bad faith. Gomez vehemently argued that the government failed to properly investigate the case and stubbornly prosecuted based on misunderstandings and erroneous assumptions. *Gomez*, No. 10-CR-1326, 2012 WL 2899715, at *5. But Gomez had

no evidence that the government made these alleged mistakes because of personal animus or conscious wrongdoing on the part of prosecutors. *Id.* (citing *Schneider*, 395 F.3d at 88 (rejecting a defendant's claims because the evidence did not show "personal animus or dishonesty")). Furthermore, even if the discovery violations were conducted in bad faith, rather than as a result of negligence, the entire case was still not vexatious or frivolous or in bad faith. Thus, the bad faith prong of the Hyde Amendment is not met.

## CONCLUSION

Because Ms. Love did not prevail in the case against her, she is not entitled to relief under the Hyde Amendment. Even if Ms. Love did prevail, she still would not be entitled to relief because the prosecution was not vexatious, frivolous, or in bad faith. The Court does not need to reach the other elements of the Hyde Amendment claim, though it notes that Ms. Love would likely not satisfy them either, in order to deny Ms. Love relief.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Nancy Love's "Motion for Attorney's Fees and Expenses Under the Hyde Amendment" is **DENIED**.

SIGNED this 23rd day of **October 2019**.

THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE